THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| Allison Chamberlain,<br><br>                      Plaintiff,<br>v.<br><br>Carolyn Colvin,<br>Acting Commissioner of Social Security,<br><br>                      Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:24-cv-110 DBP<br><br>Chief Magistrate Judge Dustin B. Pead |

      Plaintiff Allison Chamberlain appeals the denial of her application for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the Social Security Act (Act).[1] As set forth herein, the court reverses and remands for further proceedings granting Plaintiff's Motion for Review.[2]

BACKGROUND

      Ms. Chamberlain was twenty-two years old as of her alleged onset date of January 1, 2016. She was adopted from a Ukrainian orphanage at the age of twelve and had a very difficult childhood in Ukraine, being abandoned, abused, and at age sixteen, after being adopted, being hospitalized for mental health challenges.

---

[1] The Administrative Law Judge (ALJ) denied Plaintiff's DIB claim at step two of the sequential evaluation process because she did not have a severe impairment as of her last inured date for Title II benefits, December 31, 2017. *See* 20 C.F.R. 404.1520(a)(4(ii); Social security Ruling 83-10, 1983 WL 31251, at *8 (S.S.A. 1983) ("Under title II, a period of disability cannot begin after a worker's disability insured status has expired."). Plaintiff does not challenge the Title II finding, instead focusing on the Title XVI application for SSI benefits. The court therefore does not discuss the ALJ's DIB denial. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161(10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review."); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir.2004) ("The scope of our review ... is limited to the issues the claimant ... adequately presents on appeal." (internal quotation marks omitted)).

[2] ECF No. 14.

In August 2018, Ms. Chamberlain applied for DIB and SSI. Her claim was denied initially and on reconsideration. Plaintiff then requested and received a hearing before an ALJ. The ALJ concluded Ms. Chamberlain did not qualify for DIB because she did not have a disabling impairment prior to her last insured date.[3] The ALJ then considered Ms. Chamberlain's SSI application concluding she was not disabled after determining at step five of the sequential analysis[4] that given her residual functional capacity (RFC), there are other jobs Ms. Chamberlain can perform in the national economy. These include a routing clerk, folder, and marker. The Appeals Council denied Plaintiff's appeal and this appeal followed.

## LEGAL STANDARDS

Because the Appeals Council denied review, the ALJ's decision is the final agency decision.[5] The court examines the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence.[6] The court, however, may not "reweigh the evidence nor substitute [its] judgment for that of the agency."[7] "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations."[8] This evidentiary requirement is "not high."[9]

---

[3] Tr. 19. Tr. refers to the transcript of the administrative record before the court.

[4] *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (noting "an ALJ is required to assess whether or not the claimant is disabled in a five-step, sequential analysis. This analysis evaluates whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant has a medically severe impairment or impairments, (3) the impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation,2 (4) the impairment prevents the claimant from performing his or her past work, and (5) the claimant possesses a residual functional capability (RFC) to perform other work in the national economy, considering his or her age, education, and work experience.").

[5] *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

[6] *See Wall*, 561 F.3d at 1052.

[7] *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

[8] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets and internal quotation marks omitted).

[9] *Id.*

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]

## DISCUSSION

Plaintiff asserts the ALJ erred when considering her migraine headaches do not medically equal listing 11.02(A). When considering primary headache disorders, Social Security Ruling (SSR) 19-4p provides guidance on how to evaluate them.[11] SSR 19-4p notes that a "[p]rimary headache disorder is not a listed impairment in the Listing of Impairments,"[12] but it may "alone or in combination with another impairment(s), medically equal[ ] a listing."[13] Because a primary headache disorder is not found in the Listings, SSR 19-4 provides that epilepsy, Listing 11.02, "is the most closely analogous listed impairment."[14] "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)," and thus a primary headache disorder may medically equal the listing.[15]

The ALJ found Ms. Chamberlain's migraine headaches fail to meet or medically equal Listing 11.02 Epilepsy because the "record fails to demonstrate a documented typical migraine pattern occurring more frequently than once a month, in spite of at least three months of prescribed treatment as required by 11.02A and 11.02B."[16] The ALJ further noted that Plaintiff's migraine headaches "also do not occur more frequently than once every 2 months for at least 4

---

[10] *Id.* (internal quotation marks omitted).

[11] SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019).

[12] *See* 20 C.F.R. part 404, subpart P, Appendix 1, and 20 C.F.R. 404.1525 and 416.925.

[13] SSR 19-4p at *7.

[14] *Id.*

[15] *Id.*

[16] Tr. 21.

consecutive months despite adherence to prescribed treatment as required by 11.02C and 11.02D" [17] with certain marked limitations.

The Commissioner argues the evidence required to find medical equivalence for Plaintiff's migraines was not in the record. State agency medical psychological consultants failed to find Plaintiff's impairments equaled a listing. Rather, they found the migraines did not qualify as severe. Further, the ALJ provided "well-supported reasons" for concluding Ms. Chamberlain's migraine headache symptoms were not as severe as she claimed. These include (1) her "reasonably normal activity level"; (2) significant gaps in treatment for headaches; (3) inconsistent statements Plaintiff provided about her headaches; (4) the "conservative treatment she received for her headaches"; and (5) the "apparent efficacy of that treatment."[18]

Plaintiff takes issue with these characterizations arguing there is ample evidence in the record supporting the alleged severity of her migraine headaches. For example, the "ALJ fails entirely to mention the best documentation in the record of the frequency of her migraine headaches: [her] headache log, kept for six weeks from November 22, 2020 to January 2, 2021."[19] This journal documents migraine headaches "occurring every day and ranging from 4-9/10 on a possible 10-point scale."[20] The ALJ also "mischaracterized [her] testimony that Botox injections provide no relief at all" finding that the Botox injections reduced her headaches to 2 on a 10-point scale. Further, Plaintiff's treatment history is mischaracterized as it fails to account for her pregnancies when she couldn't take certain medications and did better overall. Finally, the ALJ erred in discounting her accompanying vertigo, finding she could work 40 hours per week.

---

[17] *Id.*

[18] ECF No. 18 at 11.

[19] ECF No. 17 at 17.

[20] *Id.*

A review of the record demonstrates this case presents "'the not uncommon situation of conflicting medical evidence,' a situation in which '[t]he trier of fact has the duty to resolve that conflict.'"[21] Adding to the conflict here, is the fact that some of Plaintiff's arguments and the Commissioner's arguments are both belied by the record.

Plaintiff's argument that the ALJ failed to consider her headache log is incorrect. The ALJ specifically references the log noting that while it was "thoroughly reviewed, evaluated for consistency, and considered in [the] decision" the persuasiveness of the log is not discussed.[22] This case is not like *Tamra A.W. v. Kijakazi*, relied on by Plaintiff, where it was "unclear whether the ALJ knew of [the] Plaintiff's headache journals."[23] Here the ALJ specifically referenced Plaintiff's headache logs.[24] Similarly, Plaintiff's reliance on the Tenth Circuit case of *Deardorff v. Comm'r*,[25] is misplaced. In *Deardorff* the "ALJ did not acknowledge or discuss any of the evidence related to [the claimant's] headaches."[26] In contrast, here the ALJ specifically discussed the evidence relating to her headaches. Contrary to Plaintiff's arguments, an ALJ is not required to explain every piece of evidence that is considered in a decision.[27]

The record further undermines Plaintiff's arguments concerning her vertigo. The ALJ explicitly considered Ms. Chamberlain's vertigo that arose after an apparent COVID infection.

---

[21] *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (quoting *Richardson v. Perales*, 402 U.S. 389, 399, 92 S.Ct. 1420, 1426 (1971)).

[22] Tr. 33.

[23] *Tamra A.W. v. Kijakazi*, No. 22-CV-1099-JAR, 2023 WL 2784854, at *7 (D. Kan. Apr. 5, 2023).

[24] Tr. 33 (citing to exhibit 18E that included Plaintiff's headache log).

[25] 762 F. App'x 484, 489 *10th Cir. 2019).

[26] *Id.*

[27] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting an ALJ is not required to set forth a "formalistic factor-by-factor recitation of the evidence").

After considering Plaintiff's vertigo, the ALJ provided "considerable restrictions and precautions to account for [her] migraines and vertigo like symptoms."[28] Thus, this argument also fails.

Turning to the Commissioner's arguments, the court agrees that Plaintiff's reasonably normal activity level and inconsistent statements about her headaches as noted by the ALJ, support the ALJ's decision denying benefits. Moreover, contrary to Plaintiff's position, the ALJ also adequately considered times when she was pregnant, "stopped taking Cymbalta",[29] and reported fewer headaches during pregnancy.

The most glaring error however in the ALJ's analysis, is the mischaracterization of the effectiveness of Botox treatment for Plaintiff's migraines. When asked at the hearing whether she had received relief from Botox treatment, Ms. Chamberlain answered "no."[30] Despite this testimony, the ALJ provides multiple times in the decision that "with Botox, the intensity of [Plaintiff's] migraines was just 2/10"[31] and referred to "her eventual positive response to Botox treatment."[32] The ALJ cited to the hearing testimony in support of these findings although the testimony contradicted these findings. The Commissioner also argues in error about the "apparent efficacy of that treatment." The mischaracterization of Ms. Chamberlain's testimony and the efficacy of Botox treatment is not harmless error[33] or a mere scrivener's error.[34] Rather,

---

[28] Tr. 27.

[29] Tr. 31.

[30] Tr. 97-98.

[31] Tr. 27. *See also* Tr. 25.

[32] Tr. 27.

[33] *See Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (concluding an error was harmless and did now warrant a remand); *Glass v. Shalala*, 43 F.3d 1392, 1396–97 (10th Cir.1994) (noting that ALJ's failure to allow claimant to cross-examine the VE was "improper" but did not constitute reversible error because there was no showing that "cross-examination would have altered the evidence before the ALJ").

[34] *S.V.P. v. Kijakazi*, No. 21-CV-03483-NRN, 2022 WL 17751248, at *2 (D. Colo. Dec. 16, 2022) (noting that "in the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent").

the court finds it undermines the ALJ's decision and in this case, warrants a remand. Upon remand the ALJ is instructed to properly consider the Botox treatment and its efficacy on Plaintiff's migraines. While the eventual determination of Plaintiff's disability may be the same as found previously given the rest of the record,[35] the court cannot turn a blind eye to the mischaracterization of Plaintiff's testimony that was relied on by the ALJ in concluding Ms. Chamberlain could perform other jobs in the national economy.

## CONCLUSION

The ALJ's decision is not free from legal error and therefore is reversed and remanded. Plaintiff's Motion for Review is granted.[36]

DATED this 13 January 2025.

_____
Dustin B. Pead
United States Magistrate Judge

---

[35] *See* SSR 19-4p at *7 (noting that it is "uncommon" for a person with a primary headache disorder to exhibit equivalent signs and limitations to those in Listing 11.02 Epilepsy).

[36] ECF No. 14.